United States District Court
Southern District of Texas
**ENTERED**
April 13, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FORUM ENERGY TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-3768 |
| | § | |
| JASON OIL & GAS EQUIPMENT, LLC, | § | |
| and JASON ENERGY TECHNOLOGIES | § | |
| CO., LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM & OPINION**

This civil action arises from the alleged misappropriation of Forum Energy Technologies'

trade secret and confidential information by Jason Oil & Gas Equipment, LLC and Jason Energy

Technologies Co., Ltd. ("Jason Energy").  Jason Energy was indicted on crimes related to the same

theft of Forum Energy's trade secrets, pleaded guilty to one count of the indictment, was sentenced,

and entered into a deferred prosecution agreement with the government.  (Docket Entry No. 17).

Forum Energy filed this civil action against Jason Energy alleging unfair competition, conspiracy,

tortious interference with prospective business relations, and tortious interference with contract,

and claims under the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act.

(Docket Entry No. 32).  Jason Energy moved to dismiss only the claim for tortious interference

with prospective relations.  (Docket Entry No. 34).

This court requested supplemental briefing on whether the Texas Uniform Trade Secrets

Act preempts the claims for tortious interference with prospective business relations, unfair

competition, and conspiracy.  (Docket Entry No. 38).  Forum Energy responded that the Trade

Secrets Act does not preempt claims based only on confidential information misappropriation. Jason Energy disagrees and argues that this court should dismiss all three claims as preempted.

Based on the motion, the responses, the supplemental briefing, and the applicable case law, the motion to dismiss is granted only as to Forum Energy's claim for tortious interference with prospective business relations. All other claims remain. The reasons are set out below.

## I. Background

Forum Energy and Jason Energy compete in the manufacturing and selling of tubing equipment used in oil and gas operations. Forum Energy "engaged in advanced research over many years to develop and perfect a specialized and highly developed form of coiled tubing," called "DURACOIL." (Docket Entry No. 32, at 5). Forum Energy alleges that "[o]ver a three-month period in late 2019, [Jason Energy] bribed Forum employee Robert Erford, Jr. ("Erford") to collect and pass on proprietary information [about DURACOIL] from his employer Forum in the form of documents, pictures, and data," so that Jason Energy could build a "new quench and temper coiled product" that directly competed with DURACOIL. (*Id.*, at 1, 12–14). Jason Energy "flew Erford to China to help their manufacturing plant manager implement Forum's trade secrets and other confidential information in defendants' processes to manufacture directly competing products." (*Id.*, at 2). As a result of Erford's assistance in supplying Jason Energy with confidential and trade secret information, Jason Energy was able to create and launch a product called "ReliaCoil" that directly competed with Forum Energy's DURACOIL. (*Id.*, at 12–14).

After Jason Energy launched ReliaCoil, Forum Energy customers "expected to [also] receive bids from Jason Energy for the sale of coiled tubing[.]" (*Id.*, at 14). "This expectation, based on Jason Energy's aggressive marketing activities to Forum's customers, damaged Forum." Forum Energy alleges, for example, that one of its customers "expected Jason Energy to be a

source for lower cost coiled tubing in at least the Middle East and North Africa and required pricing discounts from Forum to stay with Forum."  "As a result," Forum Energy alleges, "Forum lost profits and/or expects to lose profits from sales to this customer."  (*Id.*, at 14).

Forum Energy filed this civil action after Jason Energy pleaded guilty to federal charges of Attempted Receiving and Buying of Trade Secrets under 18 U.S.C. § 1832(a)(3), and (4) and entered into a deferred prosecution agreement.  (*Id.*).  Forum Energy asserts five causes of action: (1) violations of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act; (2) unfair competition under Texas common law; (3) conspiracy; (4) tortious interference with prospective business relations; and (5) tortious interference with Forum Energy's employment contract with Robert Erford.  (*Id.*, at 15–18).  Forum Energy seeks to enjoin Jason Energy from selling ReliaCoil and from using or disclosing any information obtained by Jason Energy.  Forum Energy also seeks damages, attorney's fees, and costs.  (*Id.*, at 18–19).

Jason Energy moved to dismiss Forum Energy's claim for tortious interference with prospective business relations and—after a request for supplemental briefing on preemption—Forum Energy's common-law claims of conspiracy and unfair competition.

## II.    The Legal Standard for a Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows dismissal of a claim if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.   Analysis

Jason Energy moved to dismiss Forum Energy's claim for tortious interference with prospective business relations, one of Forum Energy's five causes of action. (Docket Entry No. 34). Jason Energy argues that Forum Energy "has not alleged that it lost any prospective business

4

relationship or that any illegal or independently tortious conduct by Jason [Energy] has caused the loss of any prospective business relationship." (*Id.*, at 5).

This court requested supplemental briefing on whether Forum Energy's common-law claims based on the misappropriation of trade secrets and confidential information are preempted by the Texas Uniform Trade Secrets Act.  Jason Energy responded that the Texas Uniform Trade Secrets Act does preempt these claims, requiring the dismissal of Forum Energy's conspiracy and unfair competition claims as well.

These issues are addressed in turn.

### A. Tortious Interference with Prospective Business Relations

"Texas law protects prospective contracts and business relations from tortious interference." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). "To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Id.*

Forum Energy alleges that "Jason Energy is a competitor of Forum and knew it was substantially certain to disrupt Forum's prospective business relationships by offering a product based on Forum's trade secrets and other confidential information." (*Id.*).  Forum Energy alleges that "[t]here is a reasonable probability Forum would have entered into a business relationship with multiple third parties for the sale of DURACOIL in 2020 and beyond," but does not identify

any of those third parties in its complaint.  (Docket Entry No. 32, at 17).  Instead, Forum Energy alleges, as an example, that one of its customers "expected Jason Energy to be a source for lower cost coiled tubing in at least the Middle East and North Africa and required pricing discounts from Forum to stay with Forum."  (*Id.*, at 14).

Jason Energy argues that these allegations are insufficient to state a plausible claim for tortious interference with prospective business relations.  (Docket Entry No. 34).  Although Forum Energy alleges that "[t]here is a reasonable probability Forum would have entered into a business relationship with multiple third parties for sale of DURACOIL in 2020 and beyond," Forum Energy identifies only one affected customer, but Forum Energy did not lose its relationship with that customer. Forum Energy alleges only that the customer expected, and received, a pricing discount.  Jason Energy argues that "merely alleging that [a] contract would have otherwise been more advantageous does not satisfy the requirement that a business relationship be prevented." (*Id.*, at 10).

Forum Energy responds that "a plaintiff may prove that it had a reasonable probability of business relationships through evidence of prior customer relationships that have the potential to repeat—even if those potential repeat customers are unidentified."  (Docket Entry No. 36, at 13). Forum Energy argues that it can allege a plausible tortious interference claim based solely on the allegations that "it 'has built a domestic and international business around the manufacturing and distribution of coiled tubing,'" and that it "'is viewed as an industry leader in the coiled tubing market' with potential repeat customers in 'the Middle East, North Africa, and Canada.'" (*Id.*, at 14).

Those allegations are insufficient to allege a "reasonable probability that [Forum Energy] would have entered into a business relationship with a third party." *Coinmach*, 417 S.W.3d at 923.

Forum Energy has, at most, alleged that there is an established customer base for DURACOIL, but it has not alleged that Jason Energy's conduct caused Forum Energy to lose any of those customers.  Forum Energy instead alleges that one of its customers negotiated for a discounted price, and that it retained that customer.

Forum Energy cites to *Bradford v. Vento*, 997 S.W.2d 713 (Tex. App. 1999), to argue that "a plaintiff may prove that it had [a] reasonable probability of relationships through evidence of prior customer relationships that have the potential to repeat—even if those potential repeat customers are unidentified."  (Docket Entry No. 36, at 14).  *Bradford* does not support Forum Energy's argument.  In that case, the plaintiff alleged that it had customer relationships that had the potential to repeat, but that the defendant's tortious conduct resulted in the plaintiff's inability to contract with those prospective customers.  Forum Energy, by contrast, has not alleged that Jason Energy's conduct actually prevented the end of an existing relationship or any prospective business relationship.

In *Bradford*, defendant Tom Taylor was the owner of Tom's Sports Cards, a store in a Texas mall.  The plaintiff, Roell Vento, was a collector of sports memorabilia who frequently traded with and left items on consignment for sale at the store.  Vento and Taylor became partners and changed the name of the business to Collector's Choice.  According to Vento, Taylor eventually sold the store to him.  Taylor, however, testified at trial that "he never agreed to a sale . . . and that his signature on the [written] contract [between the two] was forged." *Id.* at 721.

After Taylor allegedly sold the store to Vento, Vento told defendant Bruce Bradford—the manager of the mall—that he now owned the store, and expressed an interested in signing a long-term lease.  Bradford informed Vento that the current rent on the property at $770 was a "decent deal," because the property should rent for $2700.  However, Bradford dissuaded Vento from

entering into a long-term lease, telling Vento "not to worry" about signing a new lease because he would "take care of" him.  *Id.*

Taylor and Vento continued to dispute the store's ownership, ultimately resulting in an incident in which Vento was asked by the police to leave the premises.  After this incident, "Vento obtained an injunction restoring him as owner of the business."  *Id.*  However, the mall prevented Vento from entering the store because "he owed $4168.66 in back rent and unpaid electricity bills." *Id.*  The mall had raised the rent on the store from $770 to $2200, despite Bradford's earlier representation to Vento that he would continue to honor the $770 rent.  Vento was unable to cover the difference in rent, and his efforts to find a new buyer for the store fell through.

Vento sued Taylor and Bradford, among other parties, raising claims including tortious interference with prospective business relationships.  Vento alleged that Bradford's fraudulent misrepresentations about the lease terms caused him to lose the store, and therefore lose prospective business relations with the store's customers.  *Id.* at 731.  The court of appeals held that there was "legally and factually sufficient evidence [to] support [Vento's] recovery for the prospective contracts with Vento's customers," because "[t]he evidence show[ed] a reasonable probability that contractual relations would have been entered into.  Vento had considerable experience in selling sports memorabilia, a large collection of merchandise, and an established and expanding customer base.  He also testified to the volume of customer sales at the store during his association with Taylor and following his purchase of the store."  *Id.* at 732.

In *Bradford*, there was evidence and allegations that Vento had an established customer base and that Bradford's misrepresentations about the lease, and Vento's reliance on those representations, caused Vento to lose his store after he was unable to pay the increased rent.

Without a shop to sell sports memorabilia to customers, it was reasonably probable that Vento lost prospective relationships with his customers.

In this case, Forum Energy alleges that it has an established customer base, but it has not alleged that Jason Energy's conduct resulted in Forum Energy losing existing or prospective customers. Instead, Forum Energy alleges that it had to negotiate a cheaper sale price with one of its existing customers. Forum Energy argues that "reduced-price sales can show [tortious] interference." (Docket Entry No. 16, at 22). But the Texas Supreme Court has defined "tortious interference with prospective business relations" as requiring a plaintiff to establish that "there was a reasonable probability that the plaintiff *would have entered* into a business relationship with a third party." *Coinmach*, 417 S.W. at 923 (emphasis added); *see also Van Der Linden v. Khan*, 535 S.W.3d 179, 196 (Tex. App. 2017) (requiring a plaintiff to prove that the defendant "prevented the relationship from occurring"); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holding*, 219 S.W.3d 563, 590 (Tex. App. 2007) (requiring a plaintiff to prove "actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions *prevented the relationship from occurring*" (emphasis in original)). Forum Energy asks this court to expand the common-law action to apply when there is a reasonable probability that the plaintiff would have entered into a *better* business relationship with a customer. But this court, sitting in diversity, has "no authority to alter the scope of an established cause of action." *Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 291.

Forum Energy cites to a small handful of lower state-court decisions that it claims shows that "[u]nder Texas law, allegations that a defendants' tortious interference forced a plaintiff to sell at a lower value than the plaintiff would have without the interference can support a claim for tortious interference with prospective business relations." (Docket Entry No. 36, at 15). But the

9

cases that Forum Energy cites are distinguishable for reasons aptly explained by Jason Energy, (*see* Docket Entry No. 37, at 3–5), and in fact support Jason Energy's arguments for dismissal.

In *Suprise v. DeKock*, 84 S.W.3d 378 (Tex. App. 2002), for example, the plaintiffs had purchased "a tract of land for hunting, investment, and for their children." *Id.* at 379.  They alleged that the adjoining landowners intentionally tried to make the land worthless for hunting and used racial epithets against them. *Id.*  When the Suprise family decided to "sell their land to escape the harassment and . . . avoid losing their investment," their neighbors interfered with their efforts to sell the land by "posting signs and calling prospective buyers." *Id.* at 379–80.  The Suprises were ultimately "forced to sell the property at less than fair-market value." *Id.* at 380.

The Court of Appeals held that the Suprises had "alleged a *prima facie* cause of action for tortious interference with prospective contract," because they alleged that the defendants had "interfered with their efforts to sell the property[] 'by posting signs and calling prospective buyers,'" and the court could conclude "from the context of the allegations that [the defendant's] conduct was detrimental to their efforts to sell the property, because they had intended to keep the property for long-term investment and for the use and benefit of their children, but were forced to quickly sell the property at less than fair-market value." *Id.* at 381–82.

The tortious interference claim in *Suprise* was based on the prospective relationship between the Suprises "and those persons who desired to buy their property," but did not because of the neighbor's tortious interference. *Id.* at 382.  The claim was based on potential sales that never came to fruition.  The damages caused by that tortious interference was the difference between the full value that a prospective buyer might have paid for the property, and the lower value at which the Suprises sold the property.

Here, unlike *Suprise*, there is no allegation that Forum Energy had prospective customers who declined to buy Forum Energy's products after Jason Energy tortiously interfered. Instead, Forum Energy alleges that a customer asked for a discount, and Forum Energy gave the customer that discount. That is insufficient to allege a reasonable probability that Forum Energy would have, but failed, to enter into a business relationship with a third party.

Because Forum Energy has not plausibly alleged that Jason Energy tortiously interfered with any prospective business relations, the claim is dismissed.

### B.    Texas Uniform Trade Secrets Act Preemption

Even assuming that Forum Energy had plausibly alleged that there was a reasonable probability that it would have entered into a contractual relationship but for Jason Energy's tortious interference, the claim would be preempted by the Texas Uniform Trade Secrets Act.

The Texas Uniform Trade Secrets Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007. The Act does not preempt "civil remedies that are not based upon misappropriation of a trade secret." *Id.* Texas state and federal courts sitting in diversity applying Texas law have held that civil remedies—such as common-law claims of unfair competition, conversion, or tortious interference—are preempted when they are "based on the same underlying facts as [a plaintiff's] [Texas Uniform Trade Secrets Act] claim." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444, 2018 WL 315753, at *2 (W.D. Tex. Jan. 5, 2018) (a breach of fiduciary duty claim was preempted by the Trade Secrets Act); *Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017) ("[T]he [plaintiff's] breach of fiduciary duty claim duplicates its alleged violation of the Texas Uniform Trade Secrets Act. . . . Accordingly, the preemption provision in the Texas Uniform Trade Secrets Act precludes the

[plaintiff's] breach of fiduciary duty claim from serving as a basis for temporary injunctive relief."); *Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, Case No. 19-CV-00970, 2020 WL 1428941, at *1 (N.D. Tex. Mar. 24, 2020) ("[T]he Trade Secrets Act preempts [the plaintiff's] state-law claims," including tortious interference with prospective economic advantage).

Forum Energy's claim for tortious interference with prospective business relations is based on the same underlying facts as its claim under the Texas Uniform Trade Secrets Act.  Forum Energy alleges that the "Defendants misappropriated Forum's trade secrets and other confidential information," and that "Jason Energy is a competitor of Forum and knew it was substantially certain to disrupt Forum's prospective business relationships by offering a product based on Forum's trade secrets and other confidential information."  (Docket Entry No. 32, at 17–18).  Phrased differently, Forum Energy alleges that by misappropriating its trade secrets and other confidential information, Jason Energy was able to create and market a competitive product, which caused Forum Energy to lose prospective business relationships.

Forum Energy argues that its claim for tortious interference with prospective business relations is not preempted because the Trade Secrets Act "does not preempt claims that are based on merely confidential information."  (Docket Entry No. 39, at 6).  But even if that is correct, Forum Energy's claim is not based on "merely confidential information."  Forum Energy alleged that Jason Energy used "Forum's trade secrets and other confidential information . . . to manufacture directly competing products."  (Docket Entry No. 32, at 2).  As a result, Jason Energy was able to "offer[] a product based on Forum's trade secrets and other confidential information," which allegedly "disrupt[ed] Forum's prospective business relationships."  Put another way, but for Jason Energy's use of Forum's trade secrets, Jason Energy would not have been able to "offer[] a product" that it "knew was substantially certain to disrupt Forum's prospective business

relationships." (*Id.*, at 17).  Forum Energy does not allege that Jason Energy could have created a directly competing product with confidential information alone.

Forum Energy relies on *AMID, Inc. v. Medic Alert Found., United States, Inc.*, 241 F. Supp. 3d 788 (S.D. Tex. 2017), to support its argument that the Trade Secrets Act "does not preempt non-trade secret confidential information." (Docket Entry No. 39, at 2).  *AMID* permitted an unfair competition claim to proceed when the plaintiff alleged that the misappropriated information was confidential, but not protected as trade secrets.  *Id.* at 827.  The plaintiff's "common-law claim for unfair competition by misappropriation [was] not preempted by [the Texas Uniform Trade Secrets Act] because [the plaintiff] could recover on its tort claim without proving the information [was] protected as trade secrets."  *Id.* at 828.

In *AMID*, however, the plaintiff had "pleaded alternative theories of relief."  *Id.* at 827.  "It sought relief on the theory that [the defendant] misappropriated information protected as trade secrets, and alternatively under the theory that the misappropriated information was not a trade secret but was confidential."  *Id.*  On its "common-law unfair-competition claim," the plaintiff "did not allege that the information was protected as trade secrets."  *Id.*  As alleged, the plaintiff could have "recover[ed] on its tort claim without proving that the information [was] protected as trade secrets."  *Id.*

The same is not true for Forum Energy's claim for tortious interference with prospective business relations.  The claim "stems from the same underlying harm" as the Trade Secrets Act claim—Jason Energy's misappropriation of Forum Energy's trade secrets.  *Embarcadero Techs., Inc.*, 2018 WL 315753, at *3.  Forum Energy has not alleged that Jason Energy interfered with Forum Energy's prospective business relationships "without the use of alleged trade secrets." *Super Starr Int'l, LLC*, 531 S.W.3d at 843; *see also Title Source, Inc. v. HouseCanary, Inc.*, 612

S.W.3d 517, 533 (Tex. App. 2020) (a common-law claim is preempted "if the factual basis of the common law claim, as pleaded, would not exist without the use of alleged trade secrets." (citation and quotation marks omitted)).   Because "alleged trade secrets (not merely confidential information) [is] a necessary component of the facts supporting the" claim for tortious interference with prospective business relations, *Embarcadero Techs., Inc.*, 2018 WL 315753, at *3, the claim is preempted by the Texas Uniform Trade Secrets Act.

### i.    Other Common-Law Claims

Jason Energy argues that the preemption analysis applies equally to Forum Energy's claims of unfair competition and conspiracy.  (Docket Entry No. 42, at 1).  Forum Energy's unfair competition claim is based solely on Jason Energy's misappropriation of confidential information, not of trade secrets.  (*See* Docket Entry No. 32, at 16 ("Defendants unfairly competed by misappropriating Forum's confidential information to create competing products and to improve the quality and reliability of Defendants' existing products marketed and sold to Forum customers.")).   Forum Energy's conspiracy claim is based on the misappropriation of both confidential information and trade-secret information.  (*See id.* ("The object of the [conspiracy] was to knowingly . . . convert trade secrets and other confidential information belonging to Forum, . . . to a product or service . . . intending and knowing that the offense would injure Forum.")).

Whether these claims are preempted depends, in part, on whether this court applies *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788 (S.D. Tex. 2017), which held that a plaintiff's "common-law claim for unfair competition by misappropriation [was] not preempted by [the Texas Uniform Trade Secrets Act] because [the plaintiff] could recover on its tort claim without proving the information [was] protected as trade secrets." *Id.* at 828.  When *AMID* was decided, "[t]here [were] few Texas cases analyzing TUTSA preemption[.]"  241 F.

14

Supp. 3d at 825. Shortly afterwards, however, the Texas Court of Appeals issued a decision discussing TUTSA preemption. *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, Case No. 3:16-cv-545, 2018 WL 1796293 (E.D. Va. Apr. 16, 2018) ("Although . . . *AMID* suggest[s] that the TUTSA preemption provision should not be applied to dismiss claims prematurely, th[e] court lacked the guidance of Texas courts in how to interpret that provision.").

In *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017), the plaintiff alleged that the defendant had breached a fiduciary duty "by using [the plaintiff's] confidential and proprietary information." *Id.* The Court of Appeals held that the plaintiff's breach of fiduciary duty claim was preempted by the Texas Uniform Trade Secrets Act, because the defendant could not have breached a fiduciary duty "without the use of alleged trade secrets." *Id.* at 843. The opinion did not address whether a breach of fiduciary duty claim based only the misappropriation of confidential information is preempted by TUTSA, and therefore does not conflict with this court's decision in *AMID*.

At least one federal court has relied on *Super Starr* to determine that "TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information." *Embarcadero*, 2018 WL 315753, at *3. The court cited to a sentence in *Super Starr* stating that TUTSA preemption was intended to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Id.* (quoting *Super Starr*, 531 S.W. 3d at 843). The district court determine that "[t]o narrow the preemption's application exclusively to information that qualifies as a trade secret under the statute would frustrate this purpose," because the "[p]laintiffs would like to have a TUTSA claim for all of their information taken by [the

15

defendant] that qualifies as a trade secret and a fiduciary duty claim for all of the information taken by [the defendant] that does not qualify as a trade secret," even though "both claims stem from the same underlying harm—the taking of [Plaintiffs'] confidential information." *Id.* The court concluded that "TUTSA's preemption clause applies to a breach of fiduciary duty claim that is based solely upon taking confidential information." *Id.*

This court agrees, however, with a recent decision, *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904 (S.D. Tex. 2019), which held that plaintiffs could maintain their common law causes of action "for misappropriation of information that [was] not a trade secret." *Id.* at 923. The court wrote:

> *Embarcadero* and *Super Starr* both recognize that the TUTSA's preemption provision was intended to eliminate common law theories that were based on a "misappropriation of a trade secret." And, the plain language of the TUTSA's preemption provision states that it has no effect on "other civil remedies that are not based upon misappropriation of a trade secret…." Tex. Civ. Prac. & Rem. Code § 134A.007(b)(2). Yet, *Embarcadero* and the majority of courts from other jurisdictions hold that the preemption provision eliminates common law theories that are based on a misappropriation trade secrets and theories that are based on a misappropriation of information that is not a trade secret. These holdings directly conflict with TUTSA's plain language stating that it is to have no effect on civil remedies not based on trade secret misappropriation. *See* Tex. Civ. Prac. & Rem. Code § 134A.007(b)(2). The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of information that is not a trade secret.

*Id.*

Forum Energy's unfair competition claim is based solely on allegations that Jason Energy "misappropriat[ed] Forum's confidential information." (Docket Entry No. 32, at 16). As alleged, the claim is not based on the misappropriation of trade secrets. The court denies dismissal on preemption, at least at this stage. *See TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.*, 2020 WL 4708713 (W.D. Tex. June 18, 2020) (allowing the plaintiff's fraud claim to proceed because

"the alleged fraud *could* have taken place even without trade secret misappropriation" (emphasis in original)).

The conspiracy claim is a closer call. Like Forum Energy's tortious interference with prospective relations claims, Forum Energy's conspiracy claim is based on both Jason Energy's unauthorized receipt and conversion of trade secrets and confidential information. (Docket Entry No. 32, at 16). However, unlike the tortious interference claim, it is unclear whether the misappropriation of trade secrets "[is] a necessary component of the facts" supporting the the conspiracy claim. *Embarcadero Techs., Inc.*, 2018 WL 315753, at *3. It appears that Forum Energy could support a conspiracy claim based solely on a joint endeavor between Jason Energy and a Forum Energy employee to steal Forum Energy's confidential information. Because a conspiracy to misappropriate and convert confidential information could have taken place without misappropriating trade secrets, the court similarly denies dismissal of Forum Energy's conspiracy claim.

**IV.     Conclusion**

Jason Energy's motion to dismiss Forum Energy's amended claim for tortious interference with prospective relations, (Docket Entry No. 34), is granted. Because Forum Energy previously amended its claim in response to Jason Energy's first motion to dismiss, and because Forum Energy has not asked this court for permission to reamend with new facts, the claim is dismissed with prejudice. All other claims remain.

SIGNED on April 13, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

17